I think you're showing us an exhibit that's better than sipping and spitting. That's illegible from here. Your boards are illegible. I have hard copies. We have hard copies. You submitted them. I did. May it please the court. We submit that this appeal is very straightforward. The literal language of the claim method calls for dispensing the reagent in the reagent container onto the slide. Now the question presented is whether the district court committed error when it construed the word dispensing all by itself, standing alone, as limited to direct dispensing, and as excluding indirect dispensing techniques such as the sip and spit that you just referred to. We almost have, in your view, an ambiguity here, but we don't have to deal with whether it's a patent or a patent ambiguity, do we? That is true, Your Honor. Even though it's a patent case. By definition, it's a patent ambiguity. Right, as opposed to the law. Now it's undisputed that this phrase direct dispensing does not appear anywhere in the claims of the 861 patent. The claims simply say dispensing. Consequently, there are only three possible bases for construing the word dispensing, standing alone, as being limited to direct dispensing, and none of those bases is applicable here, as I'll now explain. How about the specification? Specification, that's the first basis that I'm turning to. If the specification had defined dispensing as limited to direct dispensing, then the district court's construction would have been correct. Well, let's go back to the claims. Yes. One's dispensing onto a slide. Correct. That certainly sounds like direct dispensing. No. Moreover, there is the alternative to direct dispensing, as I understand it, is this so-called pipette method called sip and spit. Correct. And I don't find that in the specification at all. It's just this direct dispensing disclosed. Isn't that correct? That is correct. The only embodiment that is discussed or described in the specification is the direct dispensing, although it's not called direct dispensing. Well, isn't that a pretty good indication that that's what the inventor intended his claims to mean? No, sir, because as this Court has repeatedly held, that even if the specification only describes a single embodiment, the claims will not be restricted to that embodiment unless the patentee has demonstrated, quote, a clear intention to limit the claims scope using words or expressions of manifest exclusion or restriction. But is there anything else in the specification, anything in the specification that suggests that any other method is contemplated? There is no—well, the specification certainly discusses both direct dispensing and indirect dispensing methods as disclosed in the prior art. We didn't invent direct dispensing. Right. So it is in the description of the prior art. Both techniques existed before our patent ever came into existence. So to that extent, yes. But you're distinguishing your invention over the prior art. No, sir. Not on this premise. And I'll turn to that in one second, but let me finish with the manifest exclusion language that comes of the jurisprudence of this Court. The narrow exception articulated in those cases is not applicable here because neither the district court nor biogenics identified any words or expressions that manifestly exclude indirect dispensing because there are none in the specification, although I admit, Your Honor, that in the preferred embodiments they illustrate direct dispensing, although it's not called that. Are there non-preferred embodiments? Other embodiments? There are no other embodiments disclosed here other than in the description of the prior art they disclose both direct dispensing as well as indirect dispensing. Now, more importantly, if the evidence had shown that a person of skill understood that the term dispensing, standing alone, is limited to direct dispensing, then the district court's construction would have been correct. But again, there's no such evidence here. To the contrary, as we pointed out in our brief, and this is at page A3524 of the appendix, biogenics conceded below, and I quote, there are two classic methods of dispensing, known as sip-and-spit dispensing and direct dispensing. So a person of ordinary skill, just looking at the unadorned term dispensing, would understand, as biogenics concedes, that dispensing, standing alone, can refer to either of those two classic methods. Now let's turn to the prosecution history. If the prosecution history revealed that the applicants either had, one, clearly limited the term dispensing to direct dispensing, or had clearly excluded indirect dispensing, then once again the district court's construction would have been correct. But that's not the case here, and let me briefly explain why. That's what the chart is for. The 861 patent has a long genealogical history before the patent office, and as illustrated on the chart, you can see the 861 patent over on the left, about halfway down, and that issued from the 309 application, which was filed in December of 99. Significantly, neither the district court nor biogenics pointed or cited to anything in the 309 application history to support this notion that dispensing is limited to direct dispensing. Of course, direct dispensing was expressly in the 052 application, and the 861 patent has the same genealogy. All of these have the same specification. They have the same specification, but the other chart that I have over here is the 052 application claims, which, if it's too far away, I'll bring it up. It's page 1536 from the appendix. This was the claim at issue, and it says dispensable directly. That's in the claim. That was not, and is not, in the claims of the 861 patent. Yeah, but the problem is it's also not in the claims of the other two applications, the 169 and the 535. It is in both claims. The word directly? Yes. As we explained in our brief, look at the pages. Okay, but that wasn't my understanding. My understanding was that the claims of those other two didn't have that directly language in them. Absolutely they did. We explained this at pages 24 to 32 of our reply brief, where we point out the specific language in the claims of those later applications that called for direct dispensing. But they didn't use the word direct. I believe they did, Your Honor, and I'll look that up. Could you show me where they did? Sure. Yes. Yes, the 169. If you look at page 26 of our brief. 26 of the reply brief? Yes. Where? Top paragraph. First full sentence. It says, those claims are directed to apparatus that have a positional configuration that can be used for direct dispensing. Yeah, yeah, yeah, but that's not the question. The question is, do they use in the claims the word direct dispensing? And they don't, right? Well, they use the equivalent language. Ah, but that's not the same thing. Okay. I mean, I asked you a specific question as to whether they use the word direct. They do not use the word direct, correct? That is correct, Your Honor. Okay. I'm sorry. Your argument is that the description of the structure implies direct. Yes. Position above the slide whereby the reagent is dispensable from the lower end of the dispenser. So that means it's coming directly out of the dispenser. As opposed to coming out from a pipette that got inserted into the dispenser and then got moved over the slide to dispense onto the slide. That's our position. So that this language is functionally identical to direct. And the arguments that were made in those applications were only made with respect to claims that had that language. There was another claim in there where we didn't make the distinction over the prior on the basis of indirect dispensing because it didn't have language which required direct disposition of the liquid from the dispenser onto the slide. So in any event, going back to the 052 application, the 052 application, the statements that we made there were with respect to claims that required direct dispensing because directly was the adverb that was modifying the term dispensable. And that is not the case here. Now, in addition, there is something in the 309 application, which is the application that issued as the H-6-1 patent, which refutes what the district court said. As explained in our briefs, the prosecution of that application, the examiner observed that the broad and unadorned dispensing method claims that issue here, quote, can be practiced by another materially different apparatus, that is, one materially different than the direct dispensing apparatus disclosed in the preferred embodiment, or by hand, such as a manual pipette means, which is an indirect dispensing technique. Thus, consistent with our position here, the examiner recognized that the dispensing method claims that issue do not require direct dispensing. Now, let me turn for a moment to the 169 and 535 applications that they're relying on on appeal. Their attempt to rely upon those statements to support the lower court's decision is unsound, because as explained at pages 24 to 25 of our reply brief, they failed to submit this evidence or make that argument to the district court. Consequently, they waived their right to do so. More specifically, in their claim construction briefing and during the oral argument, they never mentioned, much less submitted copies of either of those applications to the district court. Accordingly, in deciding the claim construction issues, the district court never considered that evidence or any arguments based upon that evidence. And having failed to submit it or to raise arguments based upon it under the research in motion case that we cited in our brief, they have waived the right to do so on appeal. But once again, even if the court were to consider that evidence, as I explained briefly a few moments ago, it doesn't support the district court's decision, because the statements that we made in these downstream applications all concerned claims which contained limitations that effectively called for direct dispensing. And indeed, there was one claim in those later applications which did not call for direct dispensing, where we didn't make the distinction that was made with respect to those that did. So we clearly drew the line between those claims that call for direct dispensing, either by use of the word direct or effectively by equivalent language, and those claims that didn't. And we never advanced the argument anywhere in any prosecution history that claims which did not call for direct dispensing are nevertheless limited to direct dispensing. Mr. Shulman, you're well into your rebuttal time. Would you choose to save it or abuse it? I will save what little I have left. You don't want to dispense with it? Mr. Goldman. May it please the Court. So the question is... So you agree, don't you, that the word dispensing includes both direct dispensing and the sip and spit? Out in space, Your Honor, I certainly do. In fact, you say that in your brief. On page 6 of your brief, you say there's two methods of dispensing. Those are the classic methods. Yes, Your Honor. So standing alone, the word dispensing would include both, right? It certainly could, Your Honor. Okay, so where in the specification does it tell us that it's limited to direct dispensing? Let's turn, as one skill in the art will turn, to Column 2. Column 2 contains a section called Disclosure of the Invention. It doesn't matter whether you call it the Summary of the Invention, Disclosure of the Invention, what it is. What does matter are the words. Column 2, line 41, describes, or it says, the automated biological processing apparatus of this invention comprises, and it talks then about some of the characteristics of reagent carousel and its slide support carousel. And then it says at line 55, the apparatus, that is, the apparatus of this invention has a reagent delivery actuator means positioned for engaging, engaging a reagent container. How do you engage this reagent container? If you take a straw and dip it in the top, you may be engaging the fluid, but you're not engaging the reagent container. And to engage the reagent container, you must act on it. And it says, engaging a reagent container positioned in a container support in the reagent supply zone, and initiating reagent delivery from the reagent container to a slide supported on a slide support in the reagent receiving zone. Now these reagent supply and reagent receiving zones are described a little bit earlier in this same paragraph, which is describing the invention as a whole. But it doesn't use the word directly, right? No, it does not use the word direct. But it does use, as I say, the word engaging. And the specification tells us in other portions that engaging the reagent container is a key part of this invention. We begin with the abstract, for example, which has been used to guide this course. You see our bar of assignment light. The same phrase is used at the bottom in the last sentence of the abstract. The apparatus also has a reagent delivery actuator means positioned for engaging a reagent container, positioned on a container support, et cetera, et cetera. Does the word directly appear anywhere in this patent? Yes, it does. Where? It appears in column 9, talking about figure 15. And figure 15, now I understand figure 15. Column 9, what line? Column 9, line 24. And again we have the air cylinder reagent delivery actuator, 18, supported by support arm, 216, contacts reagent bottle, 218, directly over slide, 214. But it doesn't say directly onto the slide. It says directly over. Over the slide. That is correct. And if we look at, well, if it actually touches the slide you're on, it's going to contaminate the sample. But if we look at figure 15, what we see in figure 15 is the reagent container inverted. It's acted on by the actuator, 18, and the foot, 306, pushes the container down. The container is 12. And a drop of reagent, 310, falls by action of gravity. Well, I don't understand what significance this has. This is just one embodiment, right? This is one embodiment, Your Honor. But it reflects back to and is supported by the description of the invention, the invention itself and the disclosure of the invention, which tells us that there's got to be engagement of the reagent container. You can't, how does one engage the reagent container without acting upon it? And there is other support in the specification. So is it your view that the references that you've just shown us satisfy the test of manifest exclusion? Or is it your view that that isn't the appropriate test? That's not the appropriate test. Phillips tells us that you can also define a claim term by implication in the specification. And in this particular case, what we have is a claim term, dispensing, which is narrowed by implication because of what is in the specification, which, as Phillips also tells us, is the single best guide to the meaning of the spirit term. Now, is the language dispensing onto a slide inclusive of the sip and spit method? Only with an intervening transfer device. Yes, Your Honor. But it is. Excuse me? But it is. Oh, it is. But there has to be that intervening transfer device, a structure. And the claims don't say dispensing reagent from a pipette onto a slide. They say dispensing reagent from this container onto a slide. And one of skill in the art is going to turn to the background art for guidance on all of this. And in the background art, what we see is not a description of inventions describing automatic identification and automatic determination, but rather forms of dispensing. But they don't distinguish the sip and spit in the background art from this invention, do they? They do indeed, Your Honor. Where? In the description of Cosgrove, auto-pipetting reagents. Where are you? I beg your pardon? Where are you? I'm sorry, Your Honor. Column 2, line 6. Cosgrove, et al. Describing an immunostaining apparatus for auto-pipetting reagents into a slide well from a cancer cell. And that's actually also the Bowman patent, which is part of the art cited in this patent. And that is a sip and spit delivery system. And your point is that after talking about Cosgrove and other prior art, you state it's an object, patent states, an object of this invention to provide a device which provides more rapid, reliable, and more reproducible results, a lot of alliteration there, than standard methods. And sip and spit is one of the standard methods. Which you have described. Sip and spit is one of the standard methods. And I do disagree with counsel that any of these describe direct dispensing. None of them do. Can I refer you to the prosecution history issue that was on the district court's discussion of that on A11? Yes, Your Honor. Isn't the rationale here, the court's rationale, seem to be a bit circular in terms of direct dispensing? The analysis, I had a hard time following it because he finds there's a disclaimer in the earlier patent. Your Honor, I agree. I couldn't catch Your Honor wrong. No, go ahead. I agree with the conclusions. I do not agree at all with the way the district court reached those conclusions. And your alternative analysis, though? So what is your, the way you would reach that conclusion? I mean, why is the 52 disclaimer applicable and governing here? Well, everything that the inventors ever said, ever said in their prosecution history is consistent with the reading of the specification to require direct dispensing. But the 52 patent had the term direct dispensing in contrast to the claims here, which do not, correct? I'm not troubled by that, Your Honor. In Microsoft, for example, Microsoft being multi-tech, that was a case of that. How can you rely on the 052 history when the claim language was exactly different? How can you rely on the 052 prosecution? Judge Prost is asking you, how can you rely on the 052 prosecution history when it had claim language that included the word direct? Well, in Microsoft, for example, I hope I can answer this clearly for you. But in Microsoft, the issue was whether there was communication, point-to-point communication over a standard telephone line or a packet-switched network like the Internet. And there were three patents ensued. And a telephone line and a modem were only in one of the patent claims in issue. They were not in the 627. Those elements were not listed in the 627 patent. And they weren't listed in the 532 patent. But they were listed in the 649 patent. Is your answer to the question that's been directed to you twice is that the 052 patent purported to define, on the basis of the same specification that you have here, what dispensing meant? Yes, Your Honor. It's a common specification to an entire family that describes a system. Then why did you have to put directly in there, but you didn't have to put directly in here? Well, I think that the specification is sufficient because it requires direct dispensing. I don't think that it's necessary to put it in. And it's not in the 169 application either, which, by the way, was in the record. It was the only time, in fact, that at the Markman hearing, there was a substantive exchange between Court and Ventana. It was over the 901 patent, which he issued from the 169 application. And indeed, in Ventana's own papers at 4181, they mentioned the 169 application, which was introduced into the record in December of 04. Anything further, Mr. Goldman? I'm just checking, Your Honor. No one ever gets penalized for not using all this time. I understand, Your Honor. And I certainly don't want to waste the Court's time. That's all I have to say. Thank you very much. Mr. Shulman has a little time left. Mr. Goldman said that there was—he represented to the Court that there's nothing—no disclosure in the patent in the prior section about direct dispensing. And we'll see that he brought it. If you turn to column one of the patent, down at the bottom of the last paragraph, line 65, there's a discussion of the Stark reference. And it says that it describes a micro-crossword-controlled system, including a revolving table or carousel supporting the radially positioned slides. So the slides are like on a turntable. A stepper motor rotates the table, placing each slide under one of the stationary syringes positioned above the slides. A predetermined volume of liquid is then delivered to a slide from each of the syringes. So the syringe is positioned directly above the slide. That's the dispenser that contains the liquid. And it's dispensed directly from the bottom of the syringe onto the slide. That was in the prior art. Direct dispensing is not new. Neither is sit and spit. This invention is not about direct dispensing. It's not in the claim. Your Honor, I believe Judge Lori asked a question about the on and in. And I think, as you correctly pointed out, as he conceded, that applies to sit and spit as well. Mr. Goldman used the term from the container onto the slide. Well, the term from is not in the claim. It just says liquid in the container is dispensed onto the slide. It doesn't tell you how it gets there. It just says this is where it started out, in the container, and this is where it ends up. And how you get there is a matter of choice. You can do it directly. You can do it indirectly. And finally, Mr. Goldman alluded to having the 169 application was part of the record in December of 2004. Maybe it was. But it wasn't part of the claim construction record, and he doesn't dispute that. Neither the 535 nor the 169 were submitted. A day after the claim construction ruling came down, they submitted it in connection with some summary judgment motions that were pending. But it was never before the court and never submitted to the court and never considered by the court during claim construction. Thank you very much. Thank you, Mr. Goldman. The case will be taken under advisement.